## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DR. BONNIE SPEARMAN,<br>**Plaintiff** | : | No. 3:24cv1825 |
| | : | |
| | : | **(Judge Munley)** |
| v. | : | |
| | : | **(Chief Magistrate Judge Bloom)** |
| MARCEL LAKE ESTATES | : | |
| PROPERTY OWNERS ASSOCIATION; | : | **FILED** |
| FRANK CAROZZA; GIL CLARK; | : | **SCRANTON** |
| RICHARD HANEL; TOM | : | |
| SCHWENZER; JOAN SCULLIN; and | : | JUL 1 1 2025 |
| NICKIE TOLERICO, | : | |
| **Defendants** | : | PER ___JKC___<br>DEPUTY CLERK |

:::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

## MEMORANDUM

Before the court is the report and recommendation ("R&R") of Chief Magistrate Judge Daryl F. Bloom recommending that Plaintiff Bonnie Spearman's *pro se* second amended complaint be dismissed with prejudice. (Doc. 22). Spearman has filed objections to the R&R, (Doc. 23), and those objections are ripe for disposition.

## Background

Marcel Lake Estates is a private, gated community located in Dingmans Ferry, Pike County, Pennsylvania.[1] (Doc. 13-1, Second Am. Compl. ¶ 16).

---

[1] These brief background facts are derived from plaintiff's second amended complaint. At this stage of the proceedings, the court must accept all factual allegations in the complaint as true. <u>Phillips v. Cnty. of Allegheny</u>, 515 F.3d 224, 233 (3d Cir. 2008). The court makes no determination, however, as to the ultimate veracity of these assertions.

Plaintiff Bonnie Spearman has resided there for over two decades. Id. ¶ 17. Marcel Lake Estates is governed by an association, Defendant Marcel Lake Estates Property Owners Association ("Association").[2]

As alleged in her second amended complaint, Spearman was elected to the Association board of directors for a two-year term in September 2020. Id. ¶¶ 4, 16. Upon her election, Spearman entered into agreements with the Association, including a confidentiality agreement, a fiduciary responsibilities agreement, and a board meeting conduct agreement, in addition to any other agreements, regulations, or bylaws that governed her property ownership subject to the Association. See id. ¶ 58.

Spearman's tenure on the Association board did not go well. She asserts claims in this action against the Association and the six other Association board members for race discrimination and retaliation pursuant to 42 U.S.C. § 1981 ("Section 1981") and the Pennsylvania Human Relations Act ("PHRA"), 43 PA. STAT. § 955(d), (e). (Doc. 13-1). Spearman is African American. (Doc. 13-1, Second Am. Compl. ¶ 5. She alleges that she was the only African American member of the Association board during her tenure. Id. ¶ 18.

---

[2] Under Pennsylvania law, a property owner's association is analogous to a miniature government. Hess v. Barton Glen Club, Inc., 718 A.2d 908, 912 (Pa. Commw. Ct. 1998); Meadow Run & Mountain Lake Park Ass'n v. Berkel, 598 A.2d 1024, 1026 (Pa. Super. Ct. 1991).

2

The other Association board members included Defendants Frank
Carozza, Gil Clark, Richard Hanel, Tom Schwenzer, Joan Scullin, and Nickie
Tolerico.  Defendant Frank Carozza served as Association board president. Id. ¶
72.  As president of the board, Carozza dictated Spearman's roles and
responsibilities. Id. ¶¶ 104, 106–07.  Defendant Richard Hanel served as
Association board vice-president. Id. ¶ 339.  According to Spearman, Carozza
advised the plaintiff that she should take any directives from Hanel as formal
assignments due to his role as board vice-president. Id. ¶ 342.

The other individual defendants possessed certain titles.  For example,
during the relevant time, Defendant Scullin was the director of environmental
aesthetics. Id. ¶ 20.  Defendant Nickie Tolerico was the pool director. Id. ¶ 22.

### 1. Issues with Spearman's Initial Assignment

Spearman alleges that she took a seat on the Association board while
balancing a full-time work schedule. Id. ¶¶ 106, 162, 204.  She soon ran into
issues with the other board members.  Arriving early to her first meeting, on
October 20, 2020, she observed Defendant Tolerico complain to Defendant
Carozza about the Association's pool construction project, which had become
burdensome. Id. ¶¶ 81, 98–99.  Defendant Carozza allegedly assured Tolerico
that he would relieve Tolerico of her pool director responsibilities that evening. Id.
¶ 100.

3

During her first meeting, Spearman took a seat on the Association board alongside another newly elected member, Defendant Tom Schwenzer. Id. ¶ 101. As discussed further below, Spearman alleges that Schwenzer freely selected his area of work as a board member, while the plaintiff's work areas were dictated by Defendant Carozza. Id. ¶¶ 102–03, 108.  Specifically, Carozza stated, at that first meeting: "Bonnie, I'm assigning you to the pool." Id. ¶ 102.  Spearman then expressed her preference to begin her term as an assistant director and work in environmental aesthetics. Id. ¶ 104.  Spearman alleges that Carozza became increasingly angry and, with assistance from Defendant Hanel, continued to pressure the plaintiff into assuming responsibilities for the pool. Id. ¶ 106.  Spearman contends that Carozza's actions, in letting Defendant Schwenzer pick his assignment and in pressuring the plaintiff to take over Defendant Tolerico's responsibilities with the pool, were motivated by race. Id. ¶¶ 109–110.

Ultimately, however, Defendant Scullin agreed to allow Spearman to assist her with environmental aesthetics. Id. ¶ 111.  "Environmental aesthetics" ostensibly means inspecting homes subject to the Association and determining whether their maintenance and/or appearance meets Association regulations. See id. ¶¶ 162–71.  Nonetheless, before Spearman could ever assist the director of this department with property inspections, Defendant Scullin terminated the plaintiff from this position. Id. ¶¶ 20–21.  Spearman alleges that Scullin

4

terminated her from these duties because: 1) plaintiff expressed COVID-19 safety concerns with driving in the same vehicle as Scullin, and 2) the property inspections arranged by Scullin were scheduled while the plaintiff was at work. Id. ¶¶ 31a, 162–64.  Per Spearman, Scullin allegedly discriminated against the plaintiff based on race in requiring the two to ride together for property inspections despite the COVID-19 pandemic and public health orders to the contrary. Id. ¶¶ 165–67.

### 2. Issues with Spearman's Subsequent Assignments

Defendant Tolerico apparently remained Association pool director despite expressing misgivings about that role. Id. ¶ 22.  In January 2021, Spearman sent an email to the entire board, offering administrative assistance to Tolerico. Id. ¶ 22.  Following the email, the assistant pool director at the time, Defendant Gil Clark, agreed to allow Spearman to serve in his place. Id. ¶ 23a.  Defendant Carozza officially appointed plaintiff to the assistant pool director position at the following board meeting on January 19, 2021. Id. ¶ 23b.

Additionally, after the meeting, Defendant Richard Hanel approached Spearman in the parking lot, requesting assistance with obtaining ownership information for Marcel Lake. Id. ¶ 24.  Spearman construed this request as a "casual favor" and not a formal request from the Association board vice-president. ¶ 27f.  As alleged Hanel later stated that he approached Spearman

5

because Defendant Carozza believed that plaintiff "did not want to do anything." Id. ¶ 27i.

In February 2021, Spearman failed to attend the board meeting due to a work emergency. Id. ¶¶ 26, 323.  Spearman alleges that she advised Defendant Clark of her issue and Clark advised that he would let the rest of the Association board know about the emergency.  Id. ¶ 27.

The following week, however, Defendant Carozza sent an email to Spearman accusing her of not accepting the positions that were offered to her. Id. ¶ 27.  It is alleged that he also accused her of not completing the project given to her by Defendant Hanel.  Id. ¶ 27c. Spearman responded, expressing to Carozza that she had been assigned the role of assistant pool director at the January board meeting and provided evidence that she had, in fact, finished Hanel's assignment that was requested of her as a "favor." Id. ¶¶ 27a-d.

Per Spearman's second amended complaint, the March 2021 Association meeting was not pleasant.  Defendant Carozza, preempted the meeting agenda to "mockingly" ask Spearman when she had been appointed to assistant pool director. Id. ¶ 28, 28a.  Spearman alleges that she reminded Carozza a second time that he appointed her to the assistant pool director position at the January board meeting though the defendant denied that the conversation happened. Id.

¶ 28b.  At the meeting, Defendant Tolerico also denied receiving Spearman's earlier email about assisting with the pool back in January. Id. ¶ 28c.

Additionally, at the March meeting, Defendant Carozza again accused Spearman of not completing the assignment given to her by Defendant Hanel. Id. ¶ 28c.  Spearman responded that she believed the assignment from Hanel to be more of a favor due to the nature and location of the request. Id. ¶ 28f. Spearman advised that she would not accept any further off-the-record requests. Id. ¶ 28j.  Carozza allegedly retorted: "Fine! No one will say anything to you!" Id. ¶ 28k.

Spearman also alleges that, at the March 2021 meeting, Defendants Carozza and Hanel took turns insulting the plaintiff and accosted her "with stereotypical innuendos of not wanting to work or do anything," which plaintiff believed implied that she "was lazy and had nefarious reasons for joining the board." Id. ¶ 28l.  Per Spearman, these comments perpetuated racial stereotypes. Id. ¶¶ 11, 36, 208.  Spearman further alleges that the March 2021 meeting minutes were drafted as though no discord occurred at the meeting. Id. ¶ 28p-q.  When Spearman attempted to correct these meeting minutes, Carozza rejected the plaintiff's corrections. Id. ¶ 28s.

According to Spearman, Defendant Carozza also reappointed the plaintiff to the position of assistant pool director at the March 2021 board meeting. Id. ¶

28n.  As indicated above, Spearman alleges that she only offered to provide the

pool director, Defendant Tolerico, with administrative assistance. Id. ¶¶ 22, 31.

Tolerico, however, requested that Spearman conduct in-person interviews

for an open lifeguard position. Id. ¶ 31.  Spearman agreed but requested to

conduct the interviews virtually due to COVID-19 concerns and public health

orders. Id. ¶ 31a.  The office secretary, Kim Carozza, informed Spearman that

the Association did not have a Zoom account and asked the plaintiff if she could

use her personal phone to conduct the interviews. Id. ¶ 31b.  Spearman believed

that using her personal phone for Association interviews was improper and

requested that the board create a Zoom account. Id. ¶ 31c.  Tolerico denied this

request and advised that she would prefer that in-person interviews be

conducted. Id. ¶ 31d.  Spearman then expressed her COVID-19 concerns

surrounding in-person interviews. Id. ¶ 31e.  Tolerico stated that she would

conduct the interviews and asked Spearman to tend to pool issues during the

day. Id.  Spearman reminded Tolerico that she only offered "administrative

assistance" due to her full-time work schedule and could not tend to board-

related tasks during daytime hours. Id. ¶ 31f.  By email, Tolerico then terminated

Spearman from her position as assistant pool director without speaking to the

plaintiff. Id. ¶ 32b.  Tolerico's communication allegedly disparaged the plaintiff

and "repeated…stereotypical innuendos about [p]laintiff not wanting to help[.]" Id.

8

¶ 32d.  Spearman alleges that Tolerico set her up for failure due to racial animus. Id. ¶ 32f.

### 3. The April 2021 Association Board Meeting

The next Association meeting occurred on April 15, 2021. Id. ¶ 32.  Prior to the meeting, Spearman sent an email distributing COVID-19 mandates and requested to make a presentation on this issue when the board was called to order. Id. ¶ 32a.  She also requested that copies of the mandates be made for distribution at the meeting. Id.  Defendant Carozza denied these requests. Id.

Based on the tenor of the March 2021 Association board meeting, Spearman brought an escort to the April meeting, allegedly fearing violent actions from Defendant Carozza. Id. ¶ 28m.  Plaintiff also wore a face covering to the meeting to prevent the spread of COVID-19.  Id. ¶ 33a.  At that meeting, however, the other board members refused to wear masks. Id. ¶¶ 33a, 33d. When Spearman expressed her concerns, Carozza told the plaintiff to leave if she was uncomfortable and shouted that he would not wear a mask. Id. ¶ 33b. Spearman then left the meeting. Id. ¶ 33d.

When the office secretary, Kim Carozza, distributed the minutes of the April board meeting in May 2021, they reflected that the Association board marked Spearman absent from that meeting. Id. ¶ 34a.  Defendant Frank Carozza denied Spearman's request to be counted as present for the length of time that she

9

attended the meeting. Id. ¶ 34b.  Between May 17, 2021 and May 18, 2021,

Spearman allegedly received emails from Defendants Scullin, Clark, Hanel, and

Schwenzer that "aided and abetted" Defendant Carozza's "alienation of [plaintiff]

and erasure of [her] presence at the April board meeting."  Id. ¶ 35.  Following

these events, Spearman offered to serve as the director for logistics, but her offer

went unanswered. Id. ¶ 40.  Spearman then did not attend meetings in June and

July 2021 because of work obligations. Id. ¶ 85.

    According to the second amended complaint, on July 24, 2021, Spearman

filed a racial discrimination complaint against the Association with the Civil Rights

Division of the Pennsylvania Office of the Attorney General ("OAG").[3] Id. ¶ 41.

On July 29, 2021, the OAG confirmed receipt and forwarded the complaint to the

Association for voluntary mediation. Id.  On August 9, 2021, the OAG closed the

case, stating that it could not compel the Association to agree to voluntary

mediation. Id. ¶ 44.  On the same day, defendants removed Spearman from her

position on the board. Id. ¶ 45.  Per the termination letter from Defendant

Carozza, the Association board determined that Spearman had violated

Association bylaws. (Doc. 13-3, Exh. 4, ECF p. 4)  Those bylaws declare that

any Association board member who is absent "without good cause or reason"

---

[3] A review of the exhibits to the second amended complaint indicates that Spearman actually
filed a complaint with the OAG's Bureau of Consumer Protection. (Doc. 13-3, Second Am.
Compl,. Exh. 1).

from four (4) meetings in a twelve-month period is deemed to have resigned from

the Board. Id.  As Spearman indicates, she only missed three meetings in a

twelve-month period due to work obligations. (Doc. 13-1, Second Am. Compl. ¶

85).  As for the fourth meeting in April of 2021, Spearman alleges that she did not

attend the entire meeting due to conflict with Defendant Carozza and others on

the board over COVID-19 masking requirements and Carozza's directive to leave

the meeting. Id.  Spearman alleges that no other Association board members'

work absences were counted as unexcused and that such treatment was racially

discriminatory. Id. ¶¶ 86–91.

On September 9, 2021, Spearman filed a Pennsylvania Human Relations

Commission ("PHRC") complaint against the Association. Id. ¶ 46.  The PHRC

closed the case on September 29, 2022, after the agency concluded that it

lacked jurisdiction. (Doc. 13-3, Second Am. Compl. Ex. 6 at ECF p. 7).

On October 4, 2024, Spearman filed a complaint in the Pike County Court

of Common Pleas against the Association, raising claims pursuant to Title VII of

the Civil Rights Act of 1964 ("Title VII") and the PHRA. (Doc. 1-2).  The

Association removed the case to federal court. (Doc. 1).  Spearman then filed

two amended complaints in response to motions to dismiss.  Plaintiff's operative

pleading replaces her initial Title VII claims with claims asserted under Section

1981. (Doc. 13-1).  The second amended complaint advances seventeen (17)

11

counts of discrimination and retaliation against the Association and the individual defendants under federal and state law. (Doc. 13-1).

Thereafter, the defendants again moved to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), arguing the following: 1) the Association and Spearman lacked an employer-employee relationship; 2) the claims against individual defendants are barred due to the plaintiff's failure to exhaust administrative remedies; and 3) plaintiff failed to allege intentional race-based discrimination or protected activity to support her Section 1981 claims. (Docs. 14-15).

On April 14, 2025, Magistrate Judge Bloom issued the instant R&R recommending that the defendants' motion to dismiss be granted. (Doc. 22).  On May 1, 2025, Spearman timely filed objections to the R&R. (Doc. 23). Defendants subsequently filed a brief in opposition to the objections on May 14, 2025, (Doc. 24), which brings this case to its present posture.

**Jurisdiction**

As Spearman asserts claims pursuant to Section 1981, the court has federal question jurisdiction. See 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.").  The court has supplemental jurisdiction over plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a). ("[I]n any civil action

of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.").

**Standards of Review**

**1. Objections to the R&R**

Spearman's objections concern an R&R recommending that defendants' motion to dismiss be granted.  In disposing of objections to a magistrate judge's report and recommendation, the district court must make a *de novo* determination of those portions of the report against which objections are made. 28 U.S.C. § 636(b)(1)(c); see also Sullivan v. Cuyler, 723 F.2d 1077, 1085 (3d Cir. 1983).  The court may accept, reject, or modify, in whole or in part the findings or recommendations made by the magistrate judge. Henderson v. Carlson, 812 F.2d 874, 877 (3d Cir. 1987).  The district court judge may also receive further evidence or recommit the matter to the magistrate judge with instructions. Id.

If a plaintiff has not objected to certain portions of the R&R, then in deciding whether to adopt those portions, the court must determine if a review of the record evidences plain error or manifest injustice. FED. R. CIV. P. 72(b) 1983 Advisory Committee Notes ("When no timely objection is filed, the court need

13

only satisfy itself that there is no clear error on the face of the record to accept the recommendation"); see also 28 U.S.C. § 636(b)(1); Sullivan, 723 F.2d at 1085.

## 2. Motions to Dismiss

The R&R is premised upon defendants' motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6). Rule 12(b)(6) provides that it is proper for the court to dismiss a complaint, in whole or in part, if the complaint fails to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). The moving party bears the burden of showing that no claim has been stated, Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005), and dismissal is appropriate only if, accepting all the facts alleged in the complaint as true, the non-moving party has failed to plead "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007).

The facts alleged must be sufficient to "raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. This requirement "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of" necessary elements of the non-moving party's cause of action. Id. Furthermore, to satisfy federal pleading requirements, the non-moving party must "provide the grounds of his entitlement to relief," which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will

14

not do." Phillips, 515 F.3d at 231 (brackets and quotations marks omitted) (quoting Twombly, 550 U.S. 544 at 555).

Moreover, when presented with a *pro se* complaint, the court should construe the complaint liberally and draw fair inferences from what is not alleged as well as from what is alleged. See Dluhos v. Strasberg, 321 F.3d 365, 369 (3d Cir. 2003). Such *pro se* complaints "must be held to less stringent standards than formal pleadings drafted by lawyers." Estelle v. Gamble, 429 U.S. 97, 106 (1976).

**Discussion**

Defendants move to dismiss Spearman's Section 1981 and PHRA claims, which relate to plaintiff's interactions with the other members of the Association's board of directors in 2020 and 2021. The R&R concludes that Spearman's Section 1981 claims fail as a matter of law because the plaintiff does not allege facts supporting her conclusions that the defendants intentionally discriminated against her based on race. (Doc. 22 at 11–12). As reasoned by Chief Magistrate Judge Bloom, the second amended complaint documents "a number of unprofessional interactions," but does not articulate facts a court can use to reasonably infer that the defendants violated the law. Id. As for Spearman's PHRA claims, the R&R concludes that the plaintiff's allegations fail to state a claim due to the lack of an employer-employee relationship, analogizing the parties' roles on the Association board as those of unpaid volunteers. Id. at 15–

16.  Finally, Chief Magistrate Judge Bloom concludes that further amendment would be futile in light of Spearman's previous attempts to amend her pleadings. Id. at 17–18.

Following the issuance of the R&R, Spearman timely filed objections.  As construed, Spearman asserts four (4) separate objections.  She objects to the chief magistrate judge's distillation of her Section 1981 claims and conclusion that her second amended complaint fails to allege facts setting forth intentional race discrimination. (Doc. 23 at 8–9).  Spearman also objects to the R&R's assessment that the PHRA applies to employer-employee relationships and not to persons. Id. at 7.  Additionally, Spearman objects to the recommendation that amendment is futile. Id. at 2.  Finally, she objects to the R&R's characterization of the defendants' conduct as mere "unprofessional interactions." Id. at 10.  The court begins with consideration of the Spearman's federal claims.

## 1. Section 1981

Spearman asserts claims under Section 1981, alleging that she was subjected to racial discrimination from other Association board members. Section 1981 prohibits racial discrimination in the making and enforcement of contracts, including employment-related decisions. See CBOCS West, Inc. v. Humphries, 553 U.S. 442, 455 (2008).

To state a claim for discrimination on the basis of race under Section 1981, the plaintiff must allege and prove: (1) that the plaintiff is a member of a racial minority, (2) an intent to discriminate on the basis of race by the defendants, and (3) discrimination concerning one or more of the activities enumerated in the statute, which includes the right to make and enforce contracts. See Castleberry v. STI Grp., 863 F.3d 259, 266 (3d Cir. 2017); see also Brown v. Philip Morris, Inc., 250 F.3d 789, 797 (3d Cir. 2001).  Further, "[d]iscriminatory intent implies that the decision-maker…selected or reaffirmed a particular course of action at least in part because of, not merely in spite of, its adverse effects upon an identifiable group." Antonelli v. New Jersey, 419 F.3d 267, 274 (3d Cir. 2005) (quoting Personnel Adm'r of Mass. v. Feeney, 442 U.S. 256, 279 (1979)(internal quotation marks omitted).  At the pleading stage, the court must evaluate whether the complaint contains sufficient factual allegations to plausibly set forth that the defendants intentionally discriminated against the plaintiff on the basis of race. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Twombly, 550 U.S. at 570.

Regarding Spearman's Section 1981 claims, the R&R concludes that, assuming a contractual relationship existed between the plaintiff and the defendants, plaintiff has not alleged any facts to support claims that the defendants intentionally discriminated against her on the basis of race. (Doc. 22 at 11–12).  The R&R notes deficiencies in the plaintiff's second amended

complaint and concludes that plaintiff's subjective beliefs and conclusory allegations do not support any reasonable inference of racial animus and, as such, fail as a matter of law. Id. at 12. In turn, Spearman objects to the magistrate judge's determinations. (Doc. 23 at 9). On *de novo* review, the court focuses on whether the second amended complaint plausibly alleges intentional racial discrimination, not on whether Spearman can ultimately prove her claim.

After review, however, the court agrees with Chief Magistrate Judge Bloom. Spearman has not pled facts supporting this element of her Section 1981 claim. Rather, her second amended complaint asserts only conclusory statements and subjective beliefs that race played a role in the interactions she details. Such allegations are insufficient to state a claim. See Tucker v. Thomas Jefferson Univ., 484 F. App'x 710, 712 (3d Cir. 2012)(citing Jones v. School Dist. of Philadelphia, 198 F.3d 403, 414 (3d Cir. 1999)); see also Fiorentini v. William Penn Sch. Dist., 665 F. App'x 229, 235 (3d Cir. 2016); Groeber v. Friedman & Schuman, P.C., 555 F. App'x 133, 135 (3d Cir. 2014)(citing Jones); Gross v. R.T. Reynolds, Inc., 487 F. App'x 711, 716 (3d Cir. 2012)(affirming dismissal of a Section 1981 action on a motion to dismiss where the plaintiff alleged a series of unfortunate events and then stated, in conclusory fashion, that the reason for those events was that the defendant harbored discriminatory animus).

18

For example, Spearman alleges that she experienced intentional race discrimination as a new Association board member at her first meeting because Defendant Carozza allowed Defendant Schwerzer to pick his first assignment on the board, but attempted to pressure, bully, or coerce the plaintiff into taking over Defendant Tolerico's responsibilities as pool director. (Doc. 13-1, Second Am. Compl. ¶¶ 101–110).  Comparator evidence may be used to establish an inference of discrimination in a Section 1981 case. See Qin v. Vertex, Inc., 100 F.4th 458, 474 (3d Cir. 2024).  Relevant factors include whether the employees had the same supervisor, were subject to the same standards, and performed similar job duties. Id. (citations omitted).

Assuming for the sake of argument that: 1) Defendant Carozza, as Association board president, was Spearman's supervisor; 2) Defendant Schwerzer was subject to the same standards as the plaintiff as a new board member; and 3) the plaintiff and Schwerzer performed similar job duties, the second amended complaint does not allege any racial disparity.  Schwerzer was able to choose his first assignment at his first board meeting. (Doc. 13-1, Second Am. Compl. ¶¶ 101, 108).  As alleged, Spearman was *also* able to choose her first assignment at her first board meeting.  Id. ¶¶ 103 (alleging that plaintiff expressed an interest in assisting with environmental aesthetics during her first board meeting), 20, 111 (alleging that the plaintiff's first assignment after this

board meeting was assisting the director of environmental aesthetics, Defendant Scullin).  Thus, Spearman's attempts to plead race discrimination through allegations about a comparator fall short.

Furthermore, even if some differential treatment occurred because Defendant Schwerzer obtained his first assignment from Defendant Carozza more easily than Spearman, there is nothing alleged indicating that Carozza or the other individual defendants treated the plaintiff differently because of her race.  Carozza allegedly became "increasingly angry" and "yell[ed] repeatedly about his authority," id. ¶ 106, but no other details are provided by the plaintiff to demonstrate that such conduct was because of her race.  The court cannot reasonably infer race discrimination from Spearman's allegations about the tone and tenor of the Association board meetings.

Spearman also alleges that Defendant Scullin discriminated against her on the basis of race after the board appointed plaintiff to assist with environmental aesthetics.  As alleged, Scullin insisted that the two ride together in the same car for 2-3 hours while they conducted property inspections. Id. ¶ 164.  Spearman avers that she then spoke up and disagreed with Scullin. Id. ¶ 37.  In response, Scullin terminated the plaintiff from doing these inspections. Id. ¶ 21.  Spearman's details about these interactions do not focus on race, however.  They focus on COVID-19 and plaintiff's work schedule. Id. ¶¶ 162–65, 170, 174.

Pursuant to Section 1981, "a plaintiff bears the burden of showing that race was a but-for cause of [her] injury." Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media, 589 U.S. 327, 333 (2020). Spearman's allegations against Defendant Scullin only set forth discrimination against the plaintiff due to her work schedule and her beliefs about COVID-19 mitigation. Spearman's other allegations do not connect her work schedule and views on COVID-19 to race.

Similarly, Spearman alleges that she experienced race discrimination in her interactions with Defendant Tolerico when the plaintiff was tasked with the role of assistant pool director. Likewise, Spearman objected to Tolerico's directives that the plaintiff conduct lifeguard interviews in person due to the plaintiff's views on COVID-19 mitigation. Id. ¶¶ 31a-f, 37, 204–217. The plaintiff also expressed that she could not complete pool-related tasks during the day due to her work schedule. Tolerico, like Scullin, then did not want Spearman to assist in that department any longer. Id. ¶ 32b. Nonetheless, just as with her allegations about Scullin, nothing in Spearman's allegations about Tolerico connect the issues between the parties to race.

Finally, based on what followed from the above allegations, Spearman contends that Defendant Carozza and others expressed that the plaintiff "did not want to work or do anything." Id. ¶ 36. While plaintiff asserts that such words reflect stereotypical innuendos about race, plaintiff also alleges that she was

21

terminated from the environmental aesthetics and pool assistant positions "because of expressing safety concerns." Id. ¶ 36. Consequently, Spearman has only alleged that she experienced discrimination based on her views about COVID-19, not because of race.

Spearman's failure to connect her views on COVID-19 to race are manifest throughout the rest of her second amended complaint. See id. ¶¶ 33a-d, 34a-b (detailing the April 2021 board meeting where the other board members refused to wear a mask and Defendant Carozza told the plaintiff to leave if she felt uncomfortable). There are no allegations permitting an inference that the defendants' references to COVID-19 or divergent positions on COVID-19 mitigation were about race.

Spearman also asserts a claim for retaliation under Section 1981, alleging that defendants terminated her from the Association board in response to her filing a complaint about race discrimination with the OAG. Id. ¶¶ 45, 130. Chief Magistrate Judge Bloom concluded that Spearman's retaliation claim could not proceed because she did not allege an underlying violation of Section 1981. (Doc. 22 at 13 (citing Estate of Oliva ex rel. McHugh v. New Jersey, 604 F.3d 788, 798 & n. 14 (3d. Cir. 2010)("Oliva"). Plaintiff's objections may be construed to challenge this conclusion.

The Supreme Court has recognized that Section 1981 encompasses retaliation claims arising from complaints of racial discrimination. See CBOCS West, Inc., 553 U.S. at 446.  To state a case for retaliation under Section 1981, a plaintiff must plausibly allege that: (1) she engaged in a protected activity; (2) defendants took an adverse action against her; and (3) there is a causal connection between the protected activity and the adverse action. See Castleberry, 863 F.3d at 267 (citing Moore v. City of Philadelphia, 461 F.3d 331, 340–41 (3d Cir. 2006)).  A plaintiff must also demonstrate that there had been an underlying Section 1981 violation.[4] See id. (citing Oliva, 604 F.3d at 798).

For the reasons set forth above, Spearman's underlying Section 1981 claims are deficient.  Thus, Spearman cannot advance her Section 1981 retaliation claims as a matter of law.  Consequently, Spearman's objections to the R&R regarding her Section 1981 claims will be overruled.  The defendants' motion to dismiss plaintiff's Section 1981 claims will be granted.

---

[4] As indicated above, Spearman initiated this action asserting claims under Title VII before converting those claims to alleged violations of Section 1981.  Although claims for retaliation under Title VII and Section 1981 are treated similarly, Oliva specifically held that a plaintiff alleging a Section 1981 retaliation claim must also demonstrate that there had been an underlying Section 1981 violation. See Ellis v. Budget Maint., Inc., 25 F. Supp. 3d 749, 754 (E.D. Pa. 2014). This requirement is not mere dicta. Id. at 755.  In Castleberry, the Third Circuit quoted this requirement from Oliva "verbatim without caveat." Hughes v. Novo Nordisk, Inc., No. CV 20-4991 (RK) (DEA), 2024 WL 2131676, at *22 (D.N.J. May 13, 2024).  The court thus considers this additional element here as part of plaintiff's *prima facie* Section 1981 retaliation case.

## 2. Characterization of Defendant's Conduct

Spearman also objects to the R&R's characterization of the alleged conduct as "unprofessional interactions," arguing that such language minimizes the discriminatory nature of the alleged actions and introduces ambiguity into the assessment of plaintiff's claims. (Doc. 23 at 10).  According to Spearman, this language risks diminishing the seriousness of the alleged misconduct and obscures the discriminatory intent behind the defendants' actions. Id.

However, this objection is general in nature and fails to identify any specific legal or factual error in the R&R.  A quarrel with phrasing, standing alone, does not constitute a valid basis to reject the R&R.  As discussed above, the second amended complaint sets forth facts documenting cold, unprofessional, unkind, unfriendly, and unneighborly conduct by her fellow Association board members. Moreover, Spearman has pled facts suggesting that fellow board members did not consider COVID-19 to be a serious public health threat in 2020 and 2021 and did not respect her full-time work schedule.  Plaintiff has not, however, alleged intentional race discrimination in violation of Section 1981.  Accordingly, this objection is overruled.

## 3. Request to Amend

In her brief in opposition to defendants' motion to dismiss, Spearman requested leave to file a third amended complaint if her claims were determined

to be deficient. (Doc. 19-2 at 26). The R&R concludes that amendment would be futile and recommends denial of plaintiff's request. (Doc. 22 at 17–18). Spearman objects to this recommendation. (Doc. 23 at 2).

Pursuant to Federal Rule of Civil Procedure 15(a)(2), a court may provide a party with leave to amend their pleadings. Fed. R. Civ. P. 15(a)(2). By rule, "[t]he court should freely give leave when justice so requires." Id. Leave should be provided absent any "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment[.]" Foman v. Davis, 371 U.S. 178, 182 (1962).

After review, the court will adopt part of this recommendation regarding the plaintiff's Section 1981 claims. The second amended complaint, which followed two previous motions to dismiss, is 126-pages long and contains extensive factual details about Spearman's interactions with her fellow Association board members. (Doc. 13-1). Given these sprawling allegations, if Spearman possessed facts which set forth plausible Section 1981 claims, she would have alleged them by now. Further leave to amend would thus be futile in this case. See Jones v. Unknown D.O.C. Bus Driver & Transportation Crew, 944 F.3d 478, 483 (3d Cir. 2019)(determining it would be futile to permit amendment where a

*pro se* litigant had "two chances to tell his story[.]").  Spearman's objection

regarding amendment will be overruled as it relates to her Section 1981 claims.

## 4. PHRA Claims

Turning to the state law claims in this case, Spearman asserts that the

defendants violated the PHRA, specifically the provisions of 43 PA. STAT. §

955(d) and (e).  Regarding Section 955(d), the PHRA prohibits retaliation for

reporting violations of the PHRA. Harrison v. Health Network Lab'ys Ltd.

Partnerships, 232 A.3d 674, 680 (Pa. 2020).  As for Section 955(e), that

provision prohibits the aiding and abetting of unlawful discriminatory practices as

defined in the statute. See Pennsylvania Hum. Rels. Comm'n v. Chester Hous.

Auth., 327 A.2d 335, 346 (Pa. 1974).  The PHRA contains broad public policy

declarations regarding "discrimination against individuals or groups by reason of

their race," because, according to the General Assembly, "[s]uch discrimination

foments domestic strife and unrest, threatens the rights and privileges of the

inhabitants of the Commonwealth, and undermines the foundations of a free

democratic state." 43 PA. STAT. § 952(a).  The PHRA also contains broad

definitions of "person" and "employer." See 43 PA. STAT. § 954(a)-(b).  The term

"person" includes "one or more individuals" and "associations." 43 PA. STAT. §

954(a).  The term "employer" includes "any person employing four or more

persons within the Commonwealth." 43 PA. STAT. § 954(a).  Moreover, the text of

26

the statutory subsections cited by the plaintiff regarding unlawful discriminatory practices apply to any "person" or "employer."  43 PA. STAT. § 955(d), (e).

Here, the R&R recommends dismissal of the plaintiffs' PHRA claims, focusing its analysis on a lack of an employer-employee relationship between the parties. (Doc. 22 at 13–17).  Spearman objects to this recommendation, citing the text of the PHRA as detailed above.  (Doc. 23 at 3–8).

After careful consideration, the court will not adopt the R&R regarding disposition of Spearman's PHRA claims.  Rather, because Spearman's federal claims are not viable, the court will decline to exercise supplemental jurisdiction over plaintiff's PHRA claims in her second amended complaint and dismiss those state law claims without prejudice. See United Mine Workers v. Gibbs, 383 U.S. 715, 726 (1966); see also 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction... if – ... the district court has dismissed all claims over which it has original jurisdiction.").  Spearman may thus proceed with her PHRA claims against the Association and the individual board members in the Pike County Court of Common Pleas if she so chooses. See 28 U.S.C. § 1367(a), (d).

## Conclusion

For the reasons set forth above, Spearman's objections to the R&R will be overruled, except for her objection to the recommendations regarding her PHRA

claims, which the court did not reach in this memorandum. The court will adopt the R&R to the extent that it determined that Spearman's second amended complaint failed to state claims for violation of Section 1981 and that leave to amend these claims would be futile. Consequently, the defendant's motion to dismiss will be granted in part and Spearman's Section 1981 claims will be dismissed with prejudice.

The R&R will not be adopted regarding its recommended disposition of Spearman's PHRA claims. Rather, the court will decline to exercise supplemental jurisdiction over these state law claims and dismiss them without prejudice.

Date: 7/11/25

JUDGE JULIA K. MUNLEY
United States District Court